UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No: 1:15-CR-39 |
| v. ) | |
| ) | |
| ROBERT R. DOGGART ) | Judge Curtis L. Collier |
| ) | |

## **MEMORANDUM & ORDER**

The government initially brought a criminal complaint against Defendant Robert R. Doggart ("Defendant") charging one count of transmitting in interstate commerce a threat or communication to injure others, in violation of 18 U.S.C. § 875(c), and one count of solicitation to commit a civil rights violation pursuant to 18 U.S.C. §§ 373 & 247 (Court File No. 1). The Government subsequently filed an information charging Defendant with only the § 875(c) offense (Court File No. 12), for which the parties filed a proposed plea agreement (Court File No. 14). The proposed factual basis in the plea agreement states the following:

> In or about February, 2015, agents with the Federal Bureau of Investigation became aware that the defendant was communicating threats concerning an area located outside of Hancock, New York, and the individuals that lived in a community there. This area is known as "Islamberg," a self-named community consisting primarily of individuals of the Islamic faith. Specifically, in a Facebook posting in February 2015, the defendant wrote that "Target 3 [Islamberg] is vulnerable from many approaches and must be utterly destroyed…" The defendant spoke with numerous other individuals (in person and over his cellular telephone) regarding his plan to attack Islamberg. The defendant justified his attack on Islamberg by claiming that the residents of Islamberg were planning a terrorist attack. The defendant stated on cellular phone communications that he planned to burn three buildings at Islamberg: a mosque, a school, and a cafeteria. The defendant was fully aware of the religious character of the mosque when he identified it as one of the buildings that needed to be burned. Additionally, the

defendant suggested on a cellular telephone call that he and his group would kill some residents of Islamberg in order to carry out the plan.

On or about March 6, 2015, the defendant used a cellular phone to call a cooperating source ("CS") with the FBI. At the time of the call, the defendant was located in Sequatchie County, Tennessee (which is within the Eastern District of Tennessee). The CS was located in El Paso, Texas at the time of the call. The defendant made clear his ultimate plan was to injure or kill the inhabitants of Islamberg in Hancock, New York. During the phone call, the defendant told the CS, "those guys [have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better." In the same recorded call, the defendant informed the CS that they could not carry pistols from Tennessee to New York because New York does not have carry permit reciprocity, but they could bring their "AR-15s, M-4s or M-16s." The defendant, in the recorded call, informed the CS that he planned to bring his M-4 rifle with four magazines. The defendant then told the CS he could provide the CS with the "meanest shotgun on Earth." When discussing the schedule for the operation, the defendant told the CS that "the drop dead date is April 15 because that's when those guys in OAF say they're gonna start a civil war." OAF is a militia organization with which the defendant had been in contact.

The defendant took numerous steps in furtherance of the threats that he communicated, many of which were discovered by the FBI through its use of wiretap issued pursuant to Title III, and other investigative techniques. At various points during the investigation, the defendant traveled to other locations to meet with individuals the defendant believed would assist him with his plan. The defendant traveled to Nashville, Tennessee, on March 17, 2015, and met with the CS. At that time, the defendant showed to the CS a map of Islamberg. On that map the defendant identified the buildings he intended to destroy. Also, the defendant carried firearms with him to Nashville, including an M-4 type weapon as well as a shotgun. Furthermore, the defendant traveled to Greenville, South Carolina, in order to meet with another individual the defendant believed was interested in assisting him. Even though this individual and the defendant did not meet, the defendant spoke with this individual on his cellular telephone and discussed the burning of the buildings, including the mosque, and other topics. These calls were intercepted pursuant to the Court's authorized wiretap interception. In other intercepted phone calls, the defendant stated that his "M-4" was "battle tested" at 350 meters, that he would serve as the stand-off gunner during the assault, and that he would shoot the residents of Islamberg during the attack. The defendant also solicited the help of other "gunners" via Facebook. The investigation of the defendant's threatening communications required significant resources and time by the FBI in both Tennessee and South Carolina.

As part of this plea agreement, the defendant admits that he willfully and knowingly sent a message in interstate commerce containing a true threat to injure the person of another, in violation of 18 U.S.C. § 875(c). Many of the acts listed

2

above occurred in the Eastern District of Tennessee.

The Court ordered the parties to address whether this factual basis contained communication on Defendant's part amounting to a "true threat" such that he could be convicted under § 875(c). This inquiry is required by Federal Rule of Procedure 11, which states that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The district court "must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.'" *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules). The purpose of this requirement "is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense." *United States v. McCreary-Redd*, 475 F.3d 718, 722 (6th Cir. 2007) (quoting *United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995)). This rule "protect[s] a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge." *McCarthy*, 394 U.S. at 467 (quoting Fed. R. Crim. P. 11, Notes of Advisory Committee on Criminal Rules). After considering the relevant law and the briefs of the government (Court File No. 24) and Defendant (Court File No. 25), the Court concludes that the plea agreement does not contain a sufficient factual basis to convict Defendant under § 875(c).

An individual who "transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another" is guilty of a felony and faces up to five years' imprisonment. 18 U.S.C. § 875(c). This statute "requires

3

that a communication be transmitted and that the communication contain a threat." *Elonis v. United States*, No. 13-983, slip op. 7-8 (June 1, 2015). In *United States v. Jeffries*, The United States Court of Appeals for the Sixth Circuit explained that "[t]o convict under § 875(c), a jury need conclude only that 'a reasonable person (1) would take the statement as a serious expression of an intention to inflict bodily harm (the mens rea), and (2) would perceive such expression as being communicated to effect some change or achieve some goal through intimidation (the actus reus).'" 692 F.3d 473, 479 (6th Cir. 2012) (quoting *United States v. Alkhabaz*, 104 F.3d 1492. 1495 (6th Cir. 1997)). The United States Supreme Court's recent opinion in *Elonis v. United States* alters the mens rea requirement described in *Jeffries*, but the actus reus is the same. Slip op. 16. *Elonis* held that the government needed to prove the defendant's mental state and that showing mere negligence was insufficient. *Id*. While the Supreme Court observed that "[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat," it stopped short of deciding whether a reckless mens rea would suffice, as that issue was not briefed by the parties. *Id*. However, questions regarding mens rea are not relevant to the instant matter because the facts in the plea agreement fail to show that even the actus reus requirement is satisfied.

Although the mens rea requirement for § 875(c) is still unclear, there is no dispute that conviction under the statute requires that a reasonable person receiving the communication "would perceive such expression as being communicated to effect some change or achieve some goal through intimidation." *Jeffries,* 692 F.3d at 479 (quoting *Alkhabaz*, 104 F.3d at 1495). Banning such a "true threat" is permissible under the First Amendment because "the government

4

has the right, if not the duty, to 'protect[] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur[.]'" *Id*. at 478 (quoting *R.A. V. v. City of St. Paul*, 505 U.S. 377, 388 (1992)). As the *Jeffries* court observed, "[m]uch like their cousins libel, obscenity, and fighting words, true threats 'by their very utterance inflict injury' on the recipient." 692 F.3d at 480 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)); *see also Alkhabaz*, 104 F.3d at 1496 ("Several other circuits have recognized that statutes prohibiting threats are designed to protect the recipient's sense of personal safety and well being.") (citing *United States v. Aman*, 31 F.3d 550 (7th Cir.1994); *United States v. Bellrichard*, 994 F.2d 1318 (8th Cir.1993)). The reasoning behind exempting laws barring true threats from First Amendment protection should be kept in mind when defining the contours of what is a true threat. "If an otherwise threatening communication is not, from an objective standpoint, transmitted for the purpose of intimidation, then it is unlikely that the recipient will be intimidated or that the recipient's peace of mind will be disturbed." *Alkhabaz*, 104 F.3d at 1496 (6th Cir. 1997).[1]

In *Alkhabaz*, the defendant was charged with violating § 875(c) for discussing, with another man via email, committing sexual violence against women and girls. The district court dismissed the indictment on the ground that the emails did not contain any "true threat" and thus were entitled to First Amendment protection. Without addressing the First Amendment issue, the Sixth Circuit upheld the district court on the basis that the indictment did not satisfy § 875(c)'s requirement that a threat be communication. The court explained that "[a]t their core,

---

[1] As noted above, *Elonis* adds a subjective intent component yet to be fully defined. Slip op. 16.

5

threats are tools that are employed when one wishes to have some effect, or achieve some goal, through intimidation." *Id.* at 1495. It concluded that, "[e]ven if a reasonable person would take the communications between [the defendant and the other man] as serious expressions of an intention to inflict bodily harm, no reasonable person would perceive such communications as being conveyed to effect some change or achieve some goal through intimidation." *Id*. at 1496.

The *Alkhabaz* court pointed to several illustrative cases, such as *United States v. Cox*, 957 F.2d 264 (6th Cir.1992), where the defendant telephoned a bank and threatened to "hurt people" at the bank unless it returned certain repossessed property, and *United States v. Schroeder*, 902 F.2d 1469 (10th Cir. 1990), where the defendant told an Assistant United States Attorney that "people would get hurt" if the government did not give him money. In both cases, although the communications might not be considered direct threats to harm the recipients, they would be viewed as intended to extort the recipients to turn over property or money. In addition to tangible items, threats might have as their objective the furtherance of some political goal. For instance, in *United States v. Kelner*, the defendant, speaking during a news conference, threatened to kill Yasser Arafat, then-leader of the Palestine Liberation Organization (PLO). 534 F.2d 1020 (2d Cir.1976). Or, as the *Alkhabaz* court noted, the goal might simply be enjoyment created by the fearful reaction of the recipient (e.g. calling in a false bomb threat). 104 F.3d at 1495. Section 875(c) does not criminalize talking about doing others harm; rather, it criminalizes such communications when they are the vehicle to achieve some aim through intimidation. That is, "a communication objectively indicating a serious expression of an intention to inflict bodily harm cannot constitute a threat unless the communication also is *conveyed for the purpose of furthering some goal through the use of intimidation*." *Id.*

6

Case 1:15-cr-00039-CLC-SKL   Document 29   Filed 06/29/15   Page 6 of 9   PageID #: 287

In the instant plea agreement, the parties point to Defendant's telephone calls in which he told a cooperating source, in reference to the people of Islamberg, "those guys [have] to be killed. Their buildings need to be burnt down. If we can get in there and do that not losing a man, even the better" (Court File No. 14, p. 3).[2] Defendant also told the cooperating source that he would provide him with various weapons (*Id.*). The government also points to the agreement's inclusion of various facts indicating the plan was real[3] and argues that "[c]ertainly, anyone hearing the defendant's threat to kill people, when viewed in isolation or in context, would understand and appreciate that the defendant's words constituted a 'true threat.'" The Court cannot conclude these facts contain a threat that could support a § 875(c) conviction because "[e]ven if a reasonable person would take the communications between [Defendant and the others] as serious expressions of an intention to inflict bodily harm, no reasonable person would perceive such communications as being *conveyed to effect some change or achieve some goal*

---

[2] The government does not mention it in its brief, but the proposed plea agreement also states that "in a Facebook posting in February 2015, the defendant wrote that 'Target 3 [Islamberg] is vulnerable from many approaches and must be utterly destroyed…'" (Court File No. 14, p. 2). In the absence of the parties indicating otherwise, the Court assumes the bracketed "Islamberg" was not in the original post. And there is no indication that anyone other than Defendant and perhaps his potential recruits would know what "Target 3" was. The statement is thus too general to constitute a true threat, as it is unclear who the target is and how anyone could be intimidated by the communication.

[3] The agreement provides that:
the defendant posted a request for other 'gunners' on his Facebook page; the defendant discussed carrying firearms to Hancock, New York; the defendant planned to burn the mosque and other buildings at Islamberg; the defendant stated that he would be the 'stand-off gunner' using his M-4 rifle which was 'battle tested' at 350 yards; and the defendant traveled from Chattanooga to Nashville to meet with the CS in order to discuss plans for the attack.
(Court File No. 14, p. 3).

*through intimidation.*" *Alkhabaz*,104 F.3d at 1496.[4]

In an attempt to address this hurdle, the government argues that Defendant's "goal in the instant case, at the very least, was to further his objective of destroying Islamberg." But as explained above, the Sixth Circuit authority construing § 875(c) require that the communication itself be the vehicle for furthering the goal through intimidation. Here, the purported communication involved planning attacks and wooing recruits rather than intimidation or coercion. A hypothetical may be useful. A defendant calls another person to ask him to be the get-away driver for a bank robbery the defendant is planning. The hypothetical defendant says to the man, in all earnestly and appearing completely serious, "if any teller doesn't hand over the money, I'm going to kill 'em." It could only be thought that the defendant intended the phone call to further his objective of getting money from the tellers through intimidation to the extent that the call helped recruit a get-away driver. That is much too attenuated. The communication is several steps removed from intimidating the tellers into handing over the money. Likewise, the communication in the instant plea agreement may have been intended to gain recruits (or perhaps

---

[4] The government also notes that true threats need not be conveyed to the target of the threatened violence but may be conveyed to government agents or informants, pointing to the unpublished cases of *United States v. Cope*, 283 F. App'x 384 (6th Cir. 2008), and *United States v. Hankins*, 195 F. App'x 295 (6th Cir. 2006). Cope was convicted under 18 U.S.C. § 115(a)(1)(B) for a threat to kill an Assistant United States Attorney the defendant communicated to a fellow jail mate. Hankins was convicted under 18 U.S.C. § 1513(b) for communicating to an informant a threat to kill law enforcement officers involved in a federal prosecution. But these cases, which show that statements to informants may in some circumstances be "true threats" against government officials or witnesses, are unhelpful in deciding the instant matter, which involves interpretation of § 875(c). The Court finds that *Jeffries*, a 2012 published case directly addressing the elements of § 875(c)—rather than earlier unpublished cases applying § 115(a)(1)(B) and § 1513(b)—governs the Court's analysis. And *Jeffries* contains a requirement that to convict under § 875(c) a reasonable observer "would perceive [the statement] as being communicated to effect some change or achieve some goal through intimidation . . . ." 692 F.3d at 479 (quoting *Alkhabaz*, 104 F.3d at 1495).

for some other reason), but there is no basis to believe anyone would see the communications as being conveyed to further Defendant's goals through intimidation.

Accordingly, because the factual basis in the proposed plea agreement does not contain facts sufficient to constitute a violation of 18 U.S.C. § 875(c), the Court cannot accept it. Defendant should be set for arraignment on the information by the Magistrate Judge.

**SO ORDERED.**

**ENTER:**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**